## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **SOVEREIGN PEAK VENTURES, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 2:25-cv-449** |
| **v.** | § | |
| | § | |
| **MICRO-STAR** | § | **JURY TRIAL** |
| **INTERNATIONAL CO., LTD.,** | § | |
| **Defendant.** | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Sovereign Peak Ventures, LLC ("SPV") brings this action against Micro-Star International Co., Ltd. ("MSI") for infringement of U.S. Patent Nos. 8,902,871, 9,357,441, 10,039,144, 11,672,028, and 12,225,599 and alleges the following:

## THE PARTIES

1.     Plaintiff, Sovereign Peak Ventures, LLC, is a Texas Limited Liability Company with its principal place of business in Allen, Texas.

2.     Defendant Micro-Star International Co., Ltd., is a public company organized under the laws of Taiwan, with its principal place of business located No. 69, Lide St., Zhonge Dist., New Taipei City, 235, Taiwan.  MSI may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but

has not designated and does not maintain a resident agent for service of process in Texas as required by Statute.  This action arises out of that business.  Alternatively, MSI may be served with process at its primary location at No. 69, Lide St., Zhonge Dist., New Taipei City, 235, Taiwan.

3.     MSI is a multinational conglomerate that operates under the brand name "MSI."  MSI and its affiliates are part of an interrelated group of companies that together comprise one of the world's largest computer hardware brands.  MSI represents itself as a "world leader in AI PC, gaming, content creation, business & AIoT solutions."  https://us.msi.com/about. MSI's comprehensive lineup of laptops, graphics, cards, motherboards, desktops, peripherals, servers, IPCs, robotic appliances, vehicle infotainment and telematics systems, and EV chargers are globally acclaimed." *Id.*

### Company Brief

MSI is a world leader in AI PC, gaming, content creation, business & productivity and AIoT solutions. Bolstered by its cutting-edge R&D capabilities and customer-driven innovation, MSI has a wide-ranging global presence spanning over 120 countries. Its comprehensive lineup of laptops, graphics cards, monitors, motherboards, desktops, peripherals, servers, IPCs, robotic appliances, vehicle infotainment and telematics systems, and EV charger are globally acclaimed. Committed to advancing user experiences through the finest product quality, intuitive user interface and design aesthetics, MSI is a leading brand that shapes the future of technology.

4.     According to its 2023 Annual Report, MSI's export sales to the America sales region exceeded $58 billion and $54 billion in New Taiwanese Dollars in 2023 and 2022, respectively.  2023 Annual Report at p. 76. MSI considers itself "one of the heavyweight PC manufacturers in the world."  *Id.*

5.     MSI and its affiliates are part of the same corporate structure and

distribution chain for the making, importing, offering to sell, selling, and/or using of the accused devices in the United States including in the State of Texas and this judicial district.

6.      MSI and its affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

7.      MSI and its affiliates regularly contract with customers regarding products made for or on behalf of those customers.

8.      MSI and its affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

9.      On information and belief, domestic purchasers of MSI products (*e.g.,* computer retailers, IT professionals, and end users) place orders for MSI products, whereupon MSI directs one of its affiliates to manufacture those products.  MSI then takes title to these products and ships them to an affiliate in the United States to act as the nominal importer and to fulfill those orders.

**JURISDICTION AND VENUE**

10.     SPV brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.    MSI is subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long-Arm Statute and consistent with due process, in view of its substantial business in Texas and in this judicial district including: (a) its infringing activities alleged in this complaint by which Defendant purposefully avails itself of the privilege of conducting business activities in this state and district, and thus, submits itself to the jurisdiction of this Court; and (b) regularly doing or soliciting business, contracting with and engaging in other persistent conduct targeting residents of Texas and this district, or deriving substantial revenue from goods and services offered for sale, sold, and imported to and targeting residents of Texas and this district directly and through or in concert with intermediaries, agents, distributors, importers, customers, subsidiaries and/or consumers.

12.    MSI has (itself and/or through the activities of subsidiaries, affiliates or intermediaries) further committed acts infringement in the United States, State of Texas and this District, including by importing, offering to sell, selling infringing computer products, and inducing infringement of SPV's patents in the United States, State of Texas and this District.

13.    MSI's presence and conduct directed to residents of Texas and into this district is intended to further and advance the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of

infringing MSI products in Texas and in this district.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) which provides that "a defendant not resident in the United States may be sued in any judicial district."

15.     MSI transacts business in this judicial district and has committed acts of infringement in this judicial district.

16.     MSI directly or through intermediaries, make, use, offer for sale, import, sell, advertise, or distribute products and services in the United States, the State of Texas, and in this district.

17.     MSI conducts its business of marketing, distributing, deploying, and selling products and services in Texas and in this district through its agents, representatives, affiliates, related entities, partners, distributors, and retailers.

18.     MSI continuously and systematically solicits business and contracts with residents of Texas and this district.

19.     This Court has personal jurisdiction over MSI, directly and/or indirectly via the activities of MSI and its intermediaries, agents, related entities, affiliates, distributors, importers, customers, subsidiaries, or consumers.  Alone and in concert with these entities, MSI has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas.

**MSI's Activities Directed into Texas and this District Give Rise to SPV's Claims.**

20.     SPV's claim for infringement arises out of or relates to MSI's activities in Texas and this district.

21.     MSI's websites, affiliates, related entities, distributors, and retailers (including retailer physical stores) make up MSI's intertwined omnichannel sales strategy for the sale of MSI products in the United States, in Texas, and in this district.

22.     Through the MSI website, and distributor/retailer physical stores, MSI intends to serve Texas residents and has increased sales in Texas and this district.

23.     MSI's marketing and sales strategy is intentional and designed to increase sales of MSI products (including products accused of infringement) in Texas and in this district.

24.     MSI does not limit distribution of its products or services to exclude Texas residents.  Nor has MSI changed or sought to change the functionality of its products and applications to operate in a non-infringing way in Texas or this district.

25.     MSI has taken no action to limit its advertising or sales in Texas. MSI has not refused to sell or ship its products to Texas customers or blocked access to MSI applications for Texas customers.

26.     MSI, alone and in concert with its affiliates, distributors, retailers, and

related entities, has purposefully directed its activities at Texas and should reasonably anticipate being named as a defendant in this Court on this basis.

27.    This Court has personal jurisdiction over MSI, directly and/or through the activities of MSI's intermediaries, affiliates, distributors, retailers, importers, and related entities.  Through its own conduct and through direction and control of these entities, MSI has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over MSI would not offend traditional notions of fair play and substantial justice.

**MSI is Subject to Personal Jurisdiction in this Court Under Federal Rule of Civil Procedure 4(k)(2).**

28.    In the alternative, the Court has personal jurisdiction over MSI under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law; MSI is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over MSI comports with due process under the U.S. Constitution.

## THE SOVEREIGN PEAK VENTURES PATENTS AND HOW MSI INFRINGES THEM

29.    SPV owns a portfolio of patents invented by employees of Panasonic Corporation.  Since its founding in 1918, Panasonic has been at the forefront of the

electronics industry for over a century.  Since acquiring the Panasonic portfolio,

SPV has promoted adoption of technologies claimed in the Panasonic portfolio and

has entered into license agreements with numerous companies.

30.    Over the years, Panasonic has innovated in the home appliance,

battery, mobile phone, and television industries.  Panasonic's invention of the

"Paper Battery" in 1979 is widely credited as enabling the compact electronics of

today.  In 1991, Panasonic released the Mova P, the smallest and lightest mobile

phone on the market, which revolutionized the industry by demonstrating the

public's demand for a compact, lightweight device.  Panasonic also produced the

first wide-format plasma display and developed the first digital television for the

U.S. market.

31.    Panasonic's history of innovation is borne out by its intellectual

property.  Searching the Patent Office's database for Panasonic as patent assignee

yields more than 27,000 matches.

32.    Marking its centennial in 2018, Panasonic opened the Panasonic

Museum to showcase its history of design philosophy and innovation.



**THE MSI ACCUSED PRODUCTS**

33.    The Accused Products include any MSI product enabled for Wi-Fi

Direct or capable of Wi-Fi Direct. Miracast is a Wi-Fi Alliance technology that

necessarily includes Wi-Fi Direct functionality. MSI laptops that are pre-installed

with Windows 11 or Windows 10 system support Miracast by default. *See*

https://www.msi.com/faq/nb-1364#:~:text=MSI%20laptops%20that%

20are%20pre,TVs%20have%20Miracast%20built%2Din.  The Accused Products

include at least the following MSI computers that support Miracast:

- Stealth A16 AI+ Copilot+ PC;

- Stealth A18 AI+ Copilot+ PC;

- Raider A18 HX;

- Vector A18 HX;

- Katana A15 AI;

- Katana A17 AI;

- Thin A15;

- Alpha 17 C7V;

- Bravo 15 C7V;

- Bravo 15 B7E;

- Delta 15 AMD Advantage Edition;

- Raider A18 HX A7V;

- Creator A16 AI+ Copilot+ PC;

- Summit A16 AI+ Copilot+ PC; and

- Prestige A16 AI+ Copilot+ PC.

**MSI INFRINGES U.S. PATENT NUMBER 8,902,871.**

34.    The Patent Office issued U.S. Patent No. 8,902,871, titled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System Base Station Apparatus, Mobile Apparatus, and Communication Method," on December 2, 2014, after a thorough examination and determination that the subject matter claimed is patentable.

35.    Claim 1 of the '871 patent recites:

A wireless base station connected to a wireless communication terminal, the wireless base station comprising:

a wireless communication section that communicates with the wireless communication terminal in accordance with a predetermined communication method; and

a control section that controls the wireless communication section,

wherein the control section controls the wireless communication section to establish a connection with the wireless communication terminal by using (i) a first connection which does not require an authentication procedure for connection with the wireless communication terminal, or (ii) a second connection which requires the authentication procedure for connection with the wireless communication terminal,

wherein the wireless communication section includes:

a first wireless communication section that communicates with the wireless communication terminal in accordance with a first wireless communication method; and

a second wireless communication section that communicates with the wireless communication terminal in accordance with a second wireless communication method, and

wherein, prior to the first wireless communication section starting communication with the wireless communication terminal, the control section controls the second wireless communication section, and transmits, to the wireless communication terminal, profile information that is necessary for the first wireless communication section to communicate with the wireless communication terminal.

36.    The Accused Products support Wi-Fi Direct.  In Wi-Fi Direct, one

Wi-Fi peer acts as a "communication terminal" and another Wi-Fi Direct peer acts as a "base station."

**P2P Client**: A P2P Device that is connected to a P2P Group Owner.

**P2P Coexistence Parameters**: A combination of Primary P2P Coexistence Parameters and Secondary P2P Coexistence Parameters.

**P2P Concurrent Device**: A P2P Device that can concurrently operate as a WLAN STA in WLAN.

**P2P Device**: Wi-Fi P2P device that is capable of acting as both a P2P Group Owner and a P2P Client.

**P2P Device Address**: An identifier used to uniquely reference a P2P Device.

**P2P Discovery**: A capability that provides a set of functions to allow a device to easily and quickly identify and connect to a device and its services in its vicinity.

**P2P Group**: A set of devices consisting of one P2P Group Owner and zero or more Clients.

**P2P Group Address**: An identifier used to uniquely reference the P2P Device Address field of the P2P Group ID attribute.

**P2P Group ID**: An identifier used to indicate the presence of a specific P2P Group.

**P2P Group Owner**: An "AP-like" entity, when not operating within DMG, or PCP, when operating within DMG, that may provide and use connectivity between Clients.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 14-15].

37.    W-Fi Direct includes functionality that connects a wireless base station (one Wi-Fi Direct peer device) to a wireless communication terminal (another Wi-Fi Direct peer device).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

38.    A Wi-Fi Direct peer device includes a wireless communication section (*e.g.*, the Wi-Fi module) that communicates with another Wi-Fi Direct peer device using a predetermined communication method.  One example predetermined communication method includes Wi-Fi Direct protocols.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

39.    A Wi-Fi direct peer device includes a control section (*e.g.*, Wi-Fi module processor) that controls the wireless communication section.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

40.    A Wi-Fi Direct peer device can establish a connection with another Wi-Fi Direct peer device using a connection that does not require authentication or a connection that does require authentication.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

41.    A Wi-Fi Direct peer device includes a first wireless communication section (*e.g.,* IEEE 802.11 portion of Wi-Fi module) that communicates with another Wi-Fi Direct peer device using a first method (*e.g.,* IEEE 802.11).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

## 3.2    P2P Group operation

P2P Group operation outside DMG closely resembles infrastructure BSS operation as defined in IEEE 802.11-2012 [1] with the P2P Group Owner assuming the role of the AP and the P2P Client assuming the role of the STA. The similarities and differences between infrastructure BSS and P2P Group operation outside DMG are described in this section.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 58].

42.    A Wi-Fi Direct peer device includes a second wireless communication section (*e.g.*, P2P portion of Wi-Fi module) that communicates with another Wi-Fi Direct peer device using a second wireless communication method (*e.g.,* P2P protocol described in the "Wi-Fi Peer-to-Peer (P2P) Technical Specification").





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

43.    A Wi-Fi Direct peer device transmits to another Wi-Fi Direct peer device, via the second method (*e.g.*, P2P), profile information (*e.g.*, operating channel attributes) necessary for the devices to communicate via the first method (*e.g.*, IEEE 802.11)





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

**3.1.4.2   Group Owner Negotiation**

Group Owner Negotiation is a three way frame exchange used to agree which P2P Device shall become P2P Group Owner and to agree on characteristics of the P2P Group, as illustrated in Figure 11. The details of those three frames are described in the following sections.



Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

**3.1.4.2.2 GO Negotiation Response**

The P2P Device receiving a GO Negotiation Request frame shall examine the received information and respond with a GO Negotiation Response frame.

A P2P Device that will become the P2P Group Owner constructs the GO Negotiation Response frame corresponding to the following rules. The Channel List attribute shall indicate the channels that the P2P Device may use as Operating Channel of the P2P Group. The channels indicated in the Channel List shall only include channels from the Channel List attribute in the GO Negotiation Request frame. The Operating Channel attribute shall indicate the intended Operating Channel of the P2P Group. The channel indicated in the Operating Channel attribute shall be one of the channels in the Channel List

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 49, 50].

**MSI INFRINGES U.S. PATENT NUMBER 9,357,441.**

44.    The Patent Office issued U.S. Patent No. 9,357,441, titled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System Base Station Apparatus, Mobile Apparatus, and Communication Method," on May 31, 2016, after a thorough examination and determination that the subject matter claimed is patentable.

45.    Claim 1 of the '441 patent recites:

A wireless communication terminal comprising:

wireless communication circuitry operative to communicate with a wireless base station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless base station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless base station; and

control circuitry operative to receive, by using the wireless communication circuitry, communication channel information from the wireless base station with a first communication method prior to the authentication connection starting with a second communication method, the communication channel information being necessary for the second communication method to select a communication channel for communicating with the wireless base station.

46.    The Accused Products support Wi-Fi Direct.  In Wi-Fi Direct, one Wi-Fi peer acts as a "communication terminal" and another Wi-Fi Direct peer acts as a "base station."

**P2P Client**: A P2P Device that is connected to a P2P Group Owner.

**P2P Coexistence Parameters**: A combination of Primary P2P Coexistence Parameters and Secondary P2P Coexistence Parameters.

**P2P Concurrent Device**: A P2P Device that can concurrently operate as a WLAN STA in WLAN.

**P2P Device**: Wi-Fi P2P device that is capable of acting as both a P2P Group Owner and a P2P Client.

**P2P Device Address**: An identifier used to uniquely reference a P2P Device.

**P2P Discovery**: A capability that provides a set of functions to allow a device to easily and quickly identify and connect to a device and its services in its vicinity.

**P2P Group**: A set of devices consisting of one P2P Group Owner and zero or more Clients.

**P2P Group Address**: An identifier used to uniquely reference the P2P Device Address field of the P2P Group ID attribute.

**P2P Group ID**: An identifier used to indicate the presence of a specific P2P Group.

**P2P Group Owner**: An "AP-like" entity, when not operating within DMG, or PCP, when operating within DMG, that may provide and use connectivity between Clients.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 14-15].

47.    A Wi-Fi Direct peer has wireless communication circuitry (*e.g.*, Wi-Fi module) that communicates with another Wi-Fi Direct peer.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

48.    A Wi-Fi Direct peer device can establish a connection with another Wi-Fi Direct peer device using a connection that does not require authentication or a connection that does not require authentication.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

49.     A Wi-Fi Direct peer device has control circuitry that controls the wireless communication circuitry.  The Wi-Fi module processor is an example of a control circuity.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

50.     A Wi-Fi Direct peer device receives from another Wi-Fi Direct peer device, via the first method (*e.g.,* P2P) communication channel information (*e.g.,* channel list and operating channel attributes) necessary for the devices to communicate via the second method (*e.g.,* IEEE 802.11).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

### 3.2    P2P Group operation

P2P Group operation outside DMG closely resembles infrastructure BSS operation as defined in IEEE 802.11-2012 [1] with the P2P Group Owner assuming the role of the AP and the P2P Client assuming the role of the STA. The similarities and differences between infrastructure BSS and P2P Group operation outside DMG are described in this section.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 58].

### 3.1.4.2  Group Owner Negotiation

Group Owner Negotiation is a three way frame exchange used to agree which P2P Device shall become P2P Group Owner and to agree on characteristics of the P2P Group, as illustrated in Figure 11. The details of those three frames are described in the following sections.



Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

### 3.1.4.2.2 GO Negotiation Response

The P2P Device receiving a GO Negotiation Request frame shall examine the received information and respond with a GO Negotiation Response frame.

A P2P Device that will become the P2P Group Owner constructs the GO Negotiation Response frame corresponding to the following rules. The Channel List attribute shall indicate the channels that the P2P Device may use as Operating Channel of the P2P Group. The channels indicated in the Channel List shall only include channels from the Channel List attribute in the GO Negotiation Request frame. The Operating Channel attribute shall indicate the intended Operating Channel of the P2P Group. The channel indicated in the Operating Channel attribute shall be one of the channels in the Channel List

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 49, 50].

## MSI INFRINGES U.S. PATENT NUMBER 10,039,144.

51.    The Patent Office issued U.S. Patent No. 10,039,144, titled "Wireless

Base Station and Wireless Communication Terminal and Wireless Communication System Base Station Apparatus, Mobile Apparatus, and Communication Method," on July 31, 2018, after a thorough examination and determination that the subject matter claimed is patentable.

52.    Claim 1 of the '144 patent recites:

A wireless communication device comprising:

wireless communication circuitry operative to communicate with a wireless station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless station; and

control circuitry operative to receive, by using the wireless communication circuitry, profile information from the wireless station with a first communication method prior to the authentication connection starting with a second communication method, the profile information being necessary for the second communication method to communicate with the wireless station, wherein

the control circuitry is operative to control the wireless communication circuitry to receive a content with the second communication method, and

the control circuitry further controls the wireless communication circuitry to receive information that is related to the content with the first communication method.

53.    The Accused Products support Wi-Fi Direct.  In Wi-Fi Direct, one Wi-Fi peer acts as a "communication terminal" and another Wi-Fi Direct peer acts

as a "wireless station."

**P2P Client**: A P2P Device that is connected to a P2P Group Owner.

**P2P Coexistence Parameters**: A combination of Primary P2P Coexistence Parameters and Secondary P2P Coexistence Parameters.

**P2P Concurrent Device**: A P2P Device that can concurrently operate as a WLAN STA in WLAN.

**P2P Device**: Wi-Fi P2P device that is capable of acting as both a P2P Group Owner and a P2P Client.

**P2P Device Address**: An identifier used to uniquely reference a P2P Device.

**P2P Discovery**: A capability that provides a set of functions to allow a device to easily and quickly identify and connect to a device and its services in its vicinity.

**P2P Group**: A set of devices consisting of one P2P Group Owner and zero or more Clients.

**P2P Group Address**: An identifier used to uniquely reference the P2P Device Address field of the P2P Group ID attribute.

**P2P Group ID**: An identifier used to indicate the presence of a specific P2P Group.

**P2P Group Owner**: An "AP-like" entity, when not operating within DMG, or PCP, when operating within DMG, that may provide and use connectivity between Clients.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 14-15].

54.    A Wi-Fi Direct peer includes wireless communication circuitry (*e.g.*, Wi-Fi module) that communicates with another Wi-Fi Direct peer.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

55.     A Wi-Fi Direct peer device can establish a connection with another Wi-Fi Direct peer device using a connection that does not require authentication or a connection that does require authentication.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

56.    A Wi-Fi Direct peer device has control circuitry (*e.g.*, Wi-Fi module processor) that controls the wireless communication circuitry.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

57.    A Wi-Fi Direct peer device receives from another Wi-Fi Direct peer device, via the first method (*e.g.,* P2P) profile information (*e.g.,* channel list and operating channel attributes) necessary for the devices to communicate via the second method (*e.g.,* IEEE 802.11).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

## 3.2    P2P Group operation

P2P Group operation outside DMG closely resembles infrastructure BSS operation as defined in IEEE 802.11-2012 [1] with the P2P Group Owner assuming the role of the AP and the P2P Client assuming the role of the STA. The similarities and differences between infrastructure BSS and P2P Group operation outside DMG are described in this section.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 58].



**3.1.4.2  Group Owner Negotiation**

Group Owner Negotiation is a three way frame exchange used to agree which P2P Device shall become P2P Group Owner and to agree on characteristics of the P2P Group, as illustrated in Figure 11. The details of those three frames are described in the following sections.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

**3.1.4.2.2 GO Negotiation Response**

The P2P Device receiving a GO Negotiation Request frame shall examine the received information and respond with a GO Negotiation Response frame.

A P2P Device that will become the P2P Group Owner constructs the GO Negotiation Response frame corresponding to the following rules. The Channel List attribute shall indicate the channels that the P2P Device may use as Operating Channel of the P2P Group. The channels indicated in the Channel List shall only include channels from the Channel List attribute in the GO Negotiation Request frame. The Operating Channel attribute shall indicate the intended Operating Channel of the P2P Group. The channel indicated in the Operating Channel attribute shall be one of the channels in the Channel List

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 49, 50].

58.    A Wi-Fi Direct peer device receives content (*e.g.,* WSC Exchange data, such as a Device Password) from another Wi-Fi Direct peer device, via the

second method (*e.g.,* IEEE 802.11).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

If a P2P Group Owner is transmitting the Invitation Request frame after NFC Static Handover, and intends to use the Device Password read from the NFC Tag in the subsequent WSC exchange, then it also shall include a WSC IE in its

P2P Invitation Request and places the Device Password ID read from the NFC Tag in a Device Password ID attribute within the WSC IE.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 55-56].

59.     A W-Fi Direct peer device receives information that is related to the content (*e.g.,* WSC IE data, such as a Device Password ID) from another Wi-Fi Direct peer device, via the first method (*e.g.,* P2P).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].



**3.1.4.2   Group Owner Negotiation**

Group Owner Negotiation is a three way frame exchange used to agree which P2P Device shall become P2P Group Owner and to agree on characteristics of the P2P Group, as illustrated in Figure 11. The details of those three frames are described in the following sections.

P2P Device

P2P Device

GO Negotiation Request
(The P2P IE includes P2P Capability, P2P Device Info, Group Owner Intent, Configuration Timeout, Listen Channel, Extended Listen Timing, Intended P2P Interface Address, Channel List, and Operating Channel attributes. The WSC IE includes Device Password ID attribute)

GO Negotiation Response
(The P2P IE includes P2P Capability, P2P Device Info, Group Owner Intent, Configuration Timeout, Intended P2P Interface Address, Channel List, and Operating Channel attributes. The WSC IE includes Device Password ID attribute)

GO Negotiation Confirmation
(The P2P IE includes P2P Capability, Status, Channel List, and Operating Channel attributes)

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

The WSC IE that is included in the GO Negotiation Response frame contains the Device Password ID and other attributes as shown in Table 65. The value of Device Password ID attribute shall be set to the specific configuration method that the P2P Device is currently using.

**Table 65—WSC IE in the GO Negotiation Response frame**

| Attribute | R/O | Allowed Values |
|---|---|---|
| Version | R | 0x10 = version1.0, 0x11 = version 1.1, etc. |
| Device Password ID | R | The value of Device Password ID attribute shall be set to the specific configuration method that the P2P Device is currently using. See Section 12 (Data Element Definitions) of the WSC Specification [2]. |
| <other...> | O | Multiple attributes are permitted. |

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 125].

**MSI INFRINGES ON U.S. PATENT NUMBER 11,672,028.**

60.     The Patent Office issued U.S. Patent No. 11,672,028, titled "Wireless

Base Station and Wireless Communication Terminal and Wireless Communication

System Base Station Apparatus, Mobile Apparatus, and Communication Method,"

on June 6, 2023, after a thorough examination and determination that the subject

matter claimed is patentable

61.     Claim 1 of the '028 patent recites

A wireless communication device comprising:

wireless communication circuitry operative to communicate with a wireless
    station using a connection having a non-authenticated component and an
    authenticated component, wherein the non-authenticated component of
    the connection does not contain an authentication procedure including a
    challenge and response between the wireless communication device and
    the wireless station, and the authenticated component of the connection
    contains an authentication procedure including a challenge and response
    between the wireless communication device and the wireless station; and
control circuitry operative to control the wireless communication circuitry to
    receive from the wireless station, via the wireless communication
    circuitry and during the non-authenticated component of the connection
    prior to the authenticated component of the connection, information
    necessary for the authenticated component of the connection,
wherein the control circuitry is further operative to control the wireless
    communication circuitry to receive content from the wireless station
    during the authenticated component of the connection, and to further
    control the wireless communication circuitry to receive additional

information that is related to the content during the non-authenticated component of the connection.

62.    The Accused Products support Wi-Fi Direct.  In Wi-Fi Direct, one Wi-Fi Direct peer acts as a "wireless communication device" and another Wi-Fi Direct peer acts as a "wireless station".

---

**P2P Client**: A P2P Device that is connected to a P2P Group Owner.

**P2P Coexistence Parameters**: A combination of Primary P2P Coexistence Parameters and Secondary P2P Coexistence Parameters.

**P2P Concurrent Device**: A P2P Device that can concurrently operate as a WLAN STA in WLAN.

**P2P Device**: Wi-Fi P2P device that is capable of acting as both a P2P Group Owner and a P2P Client.

**P2P Device Address**: An identifier used to uniquely reference a P2P Device.

**P2P Discovery**: A capability that provides a set of functions to allow a device to easily and quickly identify and connect to a device and its services in its vicinity.

**P2P Group**: A set of devices consisting of one P2P Group Owner and zero or more Clients.

**P2P Group Address**: An identifier used to uniquely reference the P2P Device Address field of the P2P Group ID attribute.

**P2P Group ID**: An identifier used to indicate the presence of a specific P2P Group.

**P2P Group Owner**: An "AP-like" entity, when not operating within DMG, or PCP, when operating within DMG, that may provide and use connectivity between Clients.

---

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 14-15].

63.    Wi-Fi Direct connects a wireless communication device (*e.g.,* one Wi-Fi Direct peer device) to a wireless station (*e.g.,* another Wi-Fi Direct peer device).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

64.    A Wi-Fi Direct peer has wireless communication circuitry (*e.g.*, Wi-Fi module) that communicates with another Wi-Fi Direct peer using a predetermined communication method (*e.g.*, Wi-Fi Direct protocols).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

65.    A Wi-Fi Direct peer device communicates with a connection from another Wi-Fi Direct peer device using a connection that does not require authentication or a connection that does not require authentication.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

66.    A Wi-Fi Direct peer device includes control circuitry (*e.g.,* Wi-Fi module processor) that controls the wireless communication circuitry.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

67.    The control circuitry causes the wireless communication circuitry to receive content from the wireless station during the authenticated component of the connection.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

> If a P2P Group Owner is transmitting the Invitation Request frame after NFC Static Handover, and intends to use the Device Password read from the NFC Tag in the subsequent WSC exchange, then it also shall include a WSC IE in its

> P2P Invitation Request and places the Device Password ID read from the NFC Tag in a Device Password ID attribute within the WSC IE.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 55-56].

68.    The control circuitry further causes the wireless communication circuitry to receive additional information (*e.g.*, Device Password ID Attribute) that is related to the content (*e.g.*, password) during the non-authenticated component of the connection.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].



### 3.1.4.2 Group Owner Negotiation

Group Owner Negotiation is a three way frame exchange used to agree which P2P Device shall become P2P Group Owner and to agree on characteristics of the P2P Group, as illustrated in Figure 11. The details of those three frames are described in the following sections.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

The WSC IE that is included in the GO Negotiation Response frame contains the Device Password ID and other attributes as shown in Table 65. The value of Device Password ID attribute shall be set to the specific configuration method that the P2P Device is currently using.

**Table 65—WSC IE in the GO Negotiation Response frame**

| Attribute | R/O | Allowed Values |
|---|---|---|
| Version | R | 0x10 = version1.0, 0x11 = version 1.1, etc. |
| Device Password ID | R | The value of Device Password ID attribute shall be set to the specific configuration method that the P2P Device is currently using. See Section 12 (Data Element Definitions) of the WSC Specification [2]. |
| <other…> | O | Multiple attributes are permitted. |

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 125].

**MSI INFRINGES ON U.S. PATENT NUMBER 12,225,599.**

69.     The Patent Office issued U.S. Patent No.12,225,599, titled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System Base Station Apparatus, Mobile Apparatus, and Communication Method," on February 11, 2025, after a thorough examination and determination that the subject matter claimed is patentable.

70.     Claim 1 of the '599 patent recites:

A wireless communication method, comprising:

a wireless communication device communicating with a wireless base station using a wireless communication connection having a non-authenticated component and an authenticated component, wherein the non-authenticated component of the connection does not contain an authentication procedure including a challenge and response between the wireless communication device and the wireless base station, and the authenticated component of the connection contains an authentication procedure including a challenge and response between the wireless communication device and the wireless base station; wherein

the wireless communication device is operative under direction of control circuitry of the wireless communication device to receive from the wireless base station and via wireless communication circuitry (i) information necessary for the authenticated component of the connection during the non-authenticated component of the connection, (ii) content during the authenticated component of the connection, and (iii) additional information that is related to the content to be received

during the authenticated component of the connection during the non-authenticated component of the connection.

71.    In Wi-Fi Direct, one Wi-Fi Direct peer acts as an "wireless communication device" and another Wi-Fi Direct peer acts as a "wireless base station."

---

**P2P Client**: A P2P Device that is connected to a P2P Group Owner.

**P2P Coexistence Parameters**: A combination of Primary P2P Coexistence Parameters and Secondary P2P Coexistence Parameters.

**P2P Concurrent Device**: A P2P Device that can concurrently operate as a WLAN STA in WLAN.

**P2P Device**: Wi-Fi P2P device that is capable of acting as both a P2P Group Owner and a P2P Client.

**P2P Device Address**: An identifier used to uniquely reference a P2P Device.

**P2P Discovery**: A capability that provides a set of functions to allow a device to easily and quickly identify and connect to a device and its services in its vicinity.

**P2P Group**: A set of devices consisting of one P2P Group Owner and zero or more Clients.

**P2P Group Address**: An identifier used to uniquely reference the P2P Device Address field of the P2P Group ID attribute.

**P2P Group ID**: An identifier used to indicate the presence of a specific P2P Group.

**P2P Group Owner**: An "AP-like" entity, when not operating within DMG, or PCP, when operating within DMG, that may provide and use connectivity between Clients.

---

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 14-15].

72.    Wi-Fi Direct connects to a wireless communication device (*e.g.,* one Wi-Fi Direct peer device) to a wireless station (*e.g.,* another Wi-Fi Direct peer device).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

73.     Wi-Fi Direct connects a wireless communication device (*e.g.,* one Wi-Fi Direct peer device) to a wireless station (*e.g.,* another Wi-Fi direct peer device).





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

74. A Wi-Fi Direct peer device communicates with a connection with another Wi-Fi Direct peer device using an authenticated connection component and a non-authenticated connection component.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

75.    A Wi-Fi Direct peer device has a control circuitry (*e.g.*, Wi-Fi module processor) that controls the wireless communication circuitry.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

76.    During the non-authenticated component of the connection, the control circuitry causes the wireless communication circuitry to receive information necessary for the authenticated component of the connection.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].



Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

77.    The control circuitry causes the wireless communication circuitry to receive content from the wireless station during authenticated component of the connection.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].

> If a P2P Group Owner is transmitting the Invitation Request frame after NFC Static Handover, and intends to use the Device Password read from the NFC Tag in the subsequent WSC exchange, then it also shall include a WSC IE in its

> P2P Invitation Request and places the Device Password ID read from the NFC Tag in a Device Password ID attribute within the WSC IE.

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 55-56].

78.     During the non-authenticated component of the connection, the control circuitry causes the wireless communication circuitry to receive additional information that is related to the content to be received during the authenticated component of the correlation.





Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168].



**3.1.4.2  Group Owner Negotiation**

Group Owner Negotiation is a three way frame exchange used to agree which P2P Device shall become P2P Group Owner and to agree on characteristics of the P2P Group, as illustrated in Figure 11. The details of those three frames are described in the following sections.

P2P Device                                                                P2P Device

GO Negotiation Request
(The P2P IE includes P2P Capability, P2P Device Info, Group Owner Intent, Configuration Timeout, Listen Channel, Extended Listen Timing, Intended P2P Interface Address, Channel List, and Operating Channel attributes. The WSC IE includes Device Password ID attribute)

GO Negotiation Response
(The P2P IE includes P2P Capability, P2P Device Info, Group Owner Intent, Configuration Timeout, Intended P2P Interface Address, Channel List, and Operating Channel attributes. The WSC IE includes Device Password ID attribute)

GO Negotiation Confirmation
(The P2P IE includes P2P Capability, Status, Channel List, and Operating Channel attributes)

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 47].

The WSC IE that is included in the GO Negotiation Response frame contains the Device Password ID and other attributes as shown in Table 65. The value of Device Password ID attribute shall be set to the specific configuration method that the P2P Device is currently using.

**Table 65—WSC IE in the GO Negotiation Response frame**

| Attribute | R/O | Allowed Values |
|---|---|---|
| Version | R | 0x10 = version1.0, 0x11 = version 1.1, etc. |
| Device Password ID | R | The value of Device Password ID attribute shall be set to the specific configuration method that the P2P Device is currently using. See Section 12 (Data Element Definitions) of the WSC Specification [2]. |
| <other...> | O | Multiple attributes are permitted. |

Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 125].

## NATURE OF THE ACTION

79.     SPV asserts that MSI infringes, directly and indirectly, certain claims of U.S. Patent Nos. 8,902,871, 9,357,441, 10,039,144, 11,672,028, and 12,225,599 (the "SPV Asserted Patents").

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 8,902,871

80.     SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

81.     SPV is the owner, by assignment, of U.S. Patent No. 8,902,871.  The '871 Patent was issued by the United States Patent and Trademark Office on December 2, 2014.

82.     As the owner of the '871 Patent, SPV holds all substantial rights in and under the '871 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

83.     The '871 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

84.     SPV alleges that MSI has infringed, and continues to infringe, the '871 Patent.

85.     MSI makes, uses, offers to sell, sells, and/or imports the Accused Products accessible on the MSI website, websites, and all other similar products

that infringe the '871 Patent.

86.    MSI has directly infringed at least claim 1 of the '871 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or importing into the United States without authority the Accused Products.

87.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '871 Patent and feature structure and/or functionality as noted above.

88.    MSI has used and tested the MSI Accused Products in the United States.

89.    MSI thus has infringed and continues to infringe the '871 Patent.

90.    MSI's activities were without authority of license under the '871 Patent.

91.    MSI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe the asserted claims including under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing into the United States the Accused Products according to their normal and intended use.

92.    MSI was provided with notice of the '871 Patent no later than July 19, 2024.

93.    MSI's knowledge of the '871 Patent, which covers operating the

Accused Products in their intended manner such that all limitations of the asserted claims of the '871 Patent are met, extends to its knowledge that the third-party infringers' use, manufacture, offer for sale, license, and/or import into the United States of the Accused Products directly infringes the '871 Patent, or, at the very least, rendered MSI willfully blind to such infringement.

94.     MSI has, since at least as early as July 2024, known or been willfully blind to the fact that the third-party infringers' use, manufacture, offer for sale, license, and/or import into the United States of the Accused Products directly infringes the '871 Patent.

95.     With knowledge of or willful blindness to the fact that the third-party infringers' use of the MSI Accused Products in their intended manner such that all limitations of the asserted claims of the '871 Patent are met directly infringes the '871 Patent, MSI has actively encouraged the third-party infringers to directly infringe the '871 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with Wi-Fi Direct capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the MSI Wi-Fi Direct functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the MSI websites (including, without

limitation, the knowledge center, instructional videos and on the MSI branded website) directing and encouraging third-party infringers how to make and use the Wi-Fi Direct features of the MSI Accused Products.

96.    MSI induces the third-party infringers to infringe the asserted claims of the '871 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '871 Patent. For example, MSI advertises and promotes the Wi-Fi Direct features of the MSI Accused Products and encourages the third-party infringers to operate them in an infringing manner. MSI further provides technical assistance directing and instructing third parties how to operate the MSI Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

97.    In response, the third-party infringers acquire and operate the MSI Accused Products in an infringing manner.

98.    MSI specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '871 Patent, and MSI knew of or was willfully blind to such infringement. MSI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the Wi-Fi Direct features of the Accused Products.  Having known or been willfully blind to

the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '871 Patent were met directly infringed the '871 Patent, MSI, upon information and belief, actively encouraged and induced the third-party infringers to directly infringe the '871 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products, and by, for example: marketing the MSI Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '871 Patent:

- https://www.msi.com/faq/windpad-1089

- https://www.msi.com/faq/notebook-1364

- MSI How-To Channel (e.g., https://www.youtube.com/watch?v=H-QtVFwTmew)

99.     Based upon the foregoing facts, among other things, MSI has induced and continues to induce infringement of the asserted claims of the '871 Patent under 35 U.S.C. § 271(b).

100.    MSI has sold, provided and/or licensed to the third-party infringers

and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by MSI—to be used as components and material parts of the inventions covered by the '871 Patent. For example, the Accused Products include Wi-Fi Direct features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

101.    MSI also knew that the accused products are operated in a manner that practices each asserted claim of the '871 Patent.

102.    The Wi-Fi Direct features are specially made and adapted to infringe the asserted claims of the '871 Patent.

103.    The Wi-Fi Direct features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the MSI Accused Products solely in a manner that is covered by the '871 Patent, it has no substantial non-infringing use. At least by SPV's notice of MSI's infringement, based upon the foregoing facts, MSI knew of or was willfully blind to the fact that such functionality was specially made and adapted for—and was in fact used in— the accused products in a manner that is covered by the '871 Patent.

104.    Based upon the foregoing facts, among other things, MSI has

contributorily infringed and continues to contributorily infringe the asserted claims of the '871 Patent under 35 U.S.C. § 271(c).

105.   Upon information and belief, MSI's acts of infringement of the '871 Patent continue since notice of the '871 patent at least as early as July 19, 2024, and are, therefore, carried out with knowledge of the asserted claims of the '871 Patent and how the MSI Accused Products infringe them.  Rather than take a license to the '871 Patent, MSI's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

106.   MSI's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of MSI's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 9,357,441

107.   SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

108.   SPV is the owner, by assignment, of U.S. Patent No. 9,357,441.  The '441 Patent was issued by the United States Patent and Trademark Office on May

31, 2016.

109.   As the owner of the '441 Patent, SPV holds all substantial rights in and under the '441 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

110.   The '441 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

111.   SPV alleges that MSI has infringed, and continues to infringe, the '441 Patent.

112.   MSI makes, uses, offers to sell, sells, and/or imports the Accused Products on the MSI website, and all other similar products that infringe the '441 Patent.

113.   MSI has directly infringed at least claim 1 of the '441 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or importing into the United States without authority the Accused Products.

114.   The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '441 Patent and feature structure and/or functionality as noted above.

115.   MSI has used and tested the Accused Products in the United States.

116.   MSI thus has infringed and continues to infringe the '441 Patent.

117.   MSI's activities were without authority of license under the '441

Patent.

118.   MSI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe the asserted claims including under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal and intended use.

119.   MSI was provided with notice of the '441 Patent no later than July 19, 2024.  MSI's knowledge of the '441 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '441 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '441 Patent, or, at the very least, rendered MSI willfully blind to such infringement.

120.   MSI has, since at least as early as July 2024, known or been willfully blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, and/or importation of the Accused Products directly infringes the '441 Patent.

121.   With knowledge of or willful blindness to the fact that the third-party infringers' use, manufacture, sale, offer for sale, license and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '441 Patent are met directly infringes the '441 Patent, MSI has actively encouraged the third-party infringers to directly infringe the '441 Patent

by making, using, testing, selling, offering for sale, importing and/or licensing the

accused products by, for example: marketing the Accused Products with Wi-Fi

Direct capabilities to the third-party infringers; supporting and managing the third-

party infringers' use of the TP- Wi-Fi Direct functionalities; and providing

technical assistance to the third-party infringers during their continued use of the

MSI Accused Products such as by, for example, publishing instructional

information on the MSI websites (including, without limitation, the knowledge

center, instructional videos and on the MSI branded website) directing and

encouraging third-party infringers how to make and use the Wi-Fi Direct features

of the MSI Accused Products.

122.   MSI induces the third-party infringers to infringe the asserted claims

of the '441 Patent by directing or encouraging them to operate, make, sell, offer to

sell, license, and/or import the Accused Products which satisfy all limitations of

the asserted claims of the '441 Patent. For example, MSI advertises and promotes

the Wi-Fi Direct features of the Accused Products and encourages the third-party

infringers to operate them in an infringing manner. MSI further provides technical

assistance directing and instructing third parties how to operate the Accused

Products by, for example, publishing instructional materials, videos, knowledge

center resources, how-to guides, troubleshooting, manuals, and user guides.

123.   In response, the third-party infringers acquire, make, sell, offer to sell,

license, operate, and/or import the Accused Products in an infringing manner.

124.    MSI specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '441 Patent, and MSI knew of or was willfully blind to such infringement. MSI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the Wi-Fi Direct features of the MSI Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '441 Patent were met directly infringed the '441 Patent, MSI, upon information and belief, actively encouraged and induced the third-party infringers to directly infringe the '441 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said MSI Accused Products, and by, for example: marketing the MSI Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the MSI Accused Products; and providing technical assistance to the third-party infringers during their continued use of the MSI Accused Products by, for example, publishing the following instructional information directing third-party infringers how to make and use the MSI Accused Products to infringe the asserted claims of the '441 Patent:

- [https://www.msi.com/faq/windpad-1089](https://www.msi.com/faq/windpad-1089)

- https://www.msi.com/faq/notebook-1364

- MSI How-To Channel (e.g., https://www.youtube.com/watch?v=H-QtVFwTmew)

125.   Based upon the foregoing facts, among other things, MSI has induced and continues to induce infringement of the asserted claims of the '441 Patent under 35 U.S.C. § 271(b).

126.   MSI has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the MSI Accused Products that are especially made and adapted—and specifically intended by MSI—to be used as components and material parts of the inventions covered by the '441 Patent. For example, the MSI Accused Products include Wi-Fi Direct features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

127.   MSI also knew that the accused products are operated in a manner that practices each asserted claim of the '441 Patent.

128.   The wireless features are specially made and adapted to infringe the asserted claims of the '441 Patent.

129.   The Wi-Fi Direct features are not a staple article or commodity of

commerce, and, because the functionality was designed to work with the MSI

Accused Products solely in a manner that is covered by the '441 Patent, it has no

substantial non-infringing use. At least by SPV's notice of MSI's infringement,

based upon the foregoing facts, MSI knew of or was willfully blind to the fact that

such Wi-Fi Direct functionality was especially made and adapted for—and was in

fact used in—the accused products in a manner that is covered by the '441 Patent.

130.   Based upon the foregoing facts, among other things, MSI has

contributorily infringed and continues to contributorily infringe the asserted claims

of the '441 Patent under 35 U.S.C. § 271(c).

131.   Upon information and belief, MSIs' acts of infringement of the '441

Patent continue since notice and since this complaint was filed and are, therefore,

carried out with knowledge of the asserted claims of the '441 Patent and how the

Accused Products infringe them.  Rather than take a license to the '441 Patent,

MSI's ongoing infringing conduct reflects a business decision to "efficiently

infringe" the asserted claims and in doing so constitutes willful infringement under

the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

132.   MSI's acts of direct and indirect infringement have caused and

continue to cause damage to SPV for which SPV is entitled to recover damages

sustained as a result of MSI's infringing acts in an amount subject to proof at trial,

which, by law, cannot be less than a reasonable royalty, together with interest and

costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 3
## INFRINGEMENT OF U.S. PATENT NO. 10,039,144

133.    SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

134.    SPV is the owner, by assignment, of U.S. Patent No. 10,039,144.  The '144 Patent was issued by the United States Patent and Trademark Office on July 31, 2018.

135.    As the owner of the '144 Patent, SPV holds all substantial rights in and under the '144 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

136.    The '144 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

137.    SPV alleges that MSI has infringed, and continues to infringe, the '144 Patent.

138.    MSI makes, uses, offers to sell, sells, and/or imports the Accused Products on the MSI website, and all other similar products that infringe the '144 Patent.

139.    MSI has directly infringed at least claim 1 of the '144 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or importing into the United States without authority the MSI Accused Products.

140.   The MSI Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '144 Patent and feature structure and/or functionality as noted above.

141.   MSI has used and tested the MSI Accused Products in the United States.

142.   MSI thus has infringed and continues to infringe the '144 Patent.

143.   MSI's activities were without authority of license under the '144 Patent.

144.   MSI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe the asserted claims including under 35 U.S.C. § 271(a) by using the MSI Accused Products according to their normal and intended use.

145.   MSI was provided with notice of the '144 Patent no later than July 19, 2024.

146.   MSI's knowledge of the '144 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '144 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '144 Patent, or, at the very least, rendered MSI willfully blind to such infringement.

147.   MSI has, since at least as early as July 2024, known or been willfully

blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, license, and/or importation of the Accused Products directly infringes the '144 Patent.

148.   With knowledge of or willful blindness to the fact that the third-party infringers' use, use, manufacture, sale, offer for sale, license, and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '144 Patent are met directly infringes the '144 Patent, MSI has actively encouraged the third-party infringers to directly infringe the '144 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with Wi-Fi Direct capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the MSI Wi-Fi Direct functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the MSI websites (including, without limitation, the knowledge center, instructional videos and on the MSI branded website) directing and encouraging third-party infringers how to make and use the Wi-Fi Direct features of the Accused Products.

149.   MSI induces the third-party infringers to infringe the asserted claims of the '144 Patent by directing or encouraging them to operate, use, manufacture,

sale, offer for sale, license, and/or importation of the Accused Products which satisfy all limitations of the asserted claims of the '144 Patent. For example, MSI advertises and promotes the Wi-Fi Direct features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. MSI further provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

150.    In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

151.    MSI specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '144 Patent, and MSI knew of or was willfully blind to such infringement. MSI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the wireless features of the MSI Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '144 Patent were met directly infringed the '144 Patent, MSI, upon information and belief, actively encouraged and induced the third-party infringers to directly infringe the '144

Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products, and by, for example: marketing the MSI Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the MSI Accused Products; and providing technical assistance to the third-party infringers during their continued use of the MSI Accused Products by, for example, publishing the following instructional information directing third-party infringers how to make and use the MSI Accused Products to infringe the asserted claims of the '144 Patent:

- https://www.msi.com/faq/windpad-1089

- https://www.msi.com/faq/notebook-1364

- MSI How-To Channel (e.g., https://www.youtube.com/watch?v=H-QtVFwTmew)

152.    Based upon the foregoing facts, among other things, MSI has induced and continues to induce infringement of the asserted claims of the '144 Patent under 35 U.S.C. § 271(b).

153.    MSI has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the MSI Accused Products that are especially made and adapted—and specifically intended by MSI—to be used as components and material parts of the inventions covered by the '144 Patent. For example, the MSI Accused Products include Wi-Fi Direct features identified above

which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

154.   MSI also knew that the accused products are operated in a manner that practices each asserted claim of the '144 Patent.

155.   The wireless features are specially made and adapted to infringe the asserted claims of the '144 Patent.

156.   The Wi-Fi Direct features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the MSI Accused Products solely in a manner that is covered by the '144 Patent, it has no substantial non-infringing use. At least by SPV's notice of MSI's infringement, based upon the foregoing facts, MSI knew of or was willfully blind to the fact that such functionality was especially made and adapted for—and was in fact used in— the accused products in a manner that is covered by the '144 Patent.

157.   Based upon the foregoing facts, among other things, MSI has contributorily infringed and continues to contributorily infringe the asserted claims of the '144 Patent under 35 U.S.C. § 271(c).

158.   Upon information and belief, MSI's acts of infringement of the '144 Patent continue since notice and since this complaint was filed and are, therefore,

carried out with knowledge of the asserted claims of the '144 Patent and how the MSI Accused Products infringe them.  Rather than take a license to the '144 Patent, MSI's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

159.   MSI's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of MSI's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 4
## INFRINGEMENT OF U.S. PATENT NO. 11,672,028

160.   SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

161.   SPV is the owner, by assignment, of U.S. Patent No. 11,672,028.  The '028 Patent was issued by the United States Patent and Trademark Office on June 6, 2023.

162.   As the owner of the '028 Patent, SPV holds all substantial rights in and under the '028 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

163.   The '028 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

164.   SPV alleges that MSI has infringed, and continues to infringe, the '144 Patent.

165.   MSI makes, uses, offers to sell, sells, licenses, and/or imports Accused Products that infringe the '028 Patent.

166.   MSI has directly infringed at least claim 1 of the '028 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or importing into the United States without authority the Accused Products.

167.   The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '028 Patent and feature structure and/or functionality comprising the steps noted above.

168.   MSI has used and tested the MSI Accused Products in the United States.

169.   MSI thus has infringed and continues to infringe the '028 Patent.

170.   MSI's activities were without authority of license under the '028 Patent.

171.   MSI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe the asserted claims including under 35 U.S.C. § 271(a) by using the MSI Accused Products according

to their normal and intended use.

172.    MSI was provided with notice of the '028 Patent no later than July 19, 2024.

173.    MSI's knowledge of the '028 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '028 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '028 Patent, or, at the very least, rendered MSI willfully blind to such infringement.

174.    MSI has, since at least as early as July 2024, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '028 Patent.

175.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the MSI Accused Products in their intended manner such that all limitations of the asserted claims of the '028 Patent are met directly infringes the '028 Patent, MSI has actively encouraged the third-party infringers to directly infringe the '028 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products by, for example: marketing the Accused Products with Wi-Fi Direct capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the MSI Wi-Fi Direct functionalities; and providing technical assistance to the third-party infringers

during their continued use of the Accused Products such as by, for example, publishing instructional information on the MSI websites (including, without limitation, the knowledge center, instructional videos and on the MSI branded website) directing and encouraging third-party infringers how to make and use the Wi-Fi Direct features of the MSI Accused Products.

176.   MSI induces the third-party infringers to infringe the asserted claims of the '028 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '028 Patent. For example, MSI advertises and promotes the Wi-Fi Direct features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. MSI further provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

177.   In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

178.   MSI specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '028 Patent, and MSI knew of or was willfully blind to such infringement. MSI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its

encouragement, advice, and assistance to the third-party infringers to use the wireless features of the Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '028 Patent were met directly infringed the '028 Patent, MSI, upon information and belief, actively encouraged and induced the third-party infringers to directly infringe the '028 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '028 Patent:

- https://www.msi.com/faq/windpad-1089

- https://www.msi.com/faq/notebook-1364

- MSI How-To Channel (e.g., https://www.youtube.com/watch?v=H-QtVFwTmew)

179.   Based upon the foregoing facts, among other things, MSI has induced and continues to induce infringement of the asserted claims of the '028 Patent

under 35 U.S.C. § 271(b).

180.   MSI has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by MSI—to be used as components and material parts of the inventions covered by the '028 Patent. For example, the Accused Products include Wi-Fi Direct features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

181.   MSI also knew that the accused products are operated in a manner that practices each asserted claim of the '028 Patent.

182.   The wireless features are specially made and adapted to infringe the asserted claims of the '028 Patent.

183.   The Wi-Fi Direct features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '028 Patent, it has no substantial non-infringing use. At least by SPV's notice of MSI's infringement, based upon the foregoing facts, MSI knew of or was willfully blind to the fact that such functionality was especially made and adapted for—and was in fact used in—the

accused products in a manner that is covered by the '028 Patent.

184.   Based upon the foregoing facts, among other things, MSI has contributorily infringed and continues to contributorily infringe the asserted claims of the '028 Patent under 35 U.S.C. § 271(c).

185.   Upon information and belief, MSIs' acts of infringement of the '028 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '028 Patent and how the MSI Accused Products infringe them.  Rather than take a license to the '028 Patent, MSI's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

186.   MSI's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of MSI's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 5
## INFRINGEMENT OF U.S. PATENT NO. 12,225,599

187.   SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

188.    SPV is the owner, by assignment, of U.S. Patent No. 12,225,599.  The '599 Patent was issued by the United States Patent and Trademark Office on February 11, 2025.

189.    As the owner of the '599 Patent, SPV holds all substantial rights in and under the '599 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

190.    The '599 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

191.    SPV alleges that MSI has infringed, and continues to infringe, the '144 Patent.

192.    MSI makes, uses, offers to sell, sells, licenses, and/or imports Accused Products" that infringe the '599 Patent.

193.    MSI has directly infringed at least claim 1 of the '599 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or importing into the United States without authority the Accused Products.

194.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '599 Patent and feature functionality comprising the steps noted above.

195.    MSI has used and tested the MSI Accused Products in the United States.

196.  MSI thus has infringed and continues to infringe the '599 Patent.

197.  MSI's activities were without authority of license under the '599 Patent.

198.  MSI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe the asserted claims including under 35 U.S.C. § 271(a) by using the MSI Accused Products according to their normal and intended use.

199.  MSI was provided with notice of the '599 Patent no later than April 2, 2025.

200.  MSI has, since at least as early as April 2025, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '599 Patent.

201.  MSI's knowledge of the '599 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '599 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '599 Patent, or, at the very least, rendered MSI willfully blind to such infringement.

202.  With knowledge of or willful blindness to the fact that the third-party infringers' use of the MSI Accused Products in their intended manner such that all limitations of the asserted claims of the '599 Patent are met directly infringes the

'599 Patent, MSI has actively encouraged the third-party infringers to directly infringe the '599 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with Wi-Fi Direct capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the MSI websites (including, without limitation, the knowledge center, instructional videos and on the MSI branded website) directing and encouraging third-party infringers how to make and use the Wi-Fi Direct features of the Accused Products.

203.   MSI induces the third-party infringers to infringe the asserted claims of the '599 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '599 Patent. For example, MSI advertises and promotes the Wi-Fi Direct features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. MSI further provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

204.   In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

205.   MSI specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '599 Patent, and MSI knew of or was willfully blind to such infringement. MSI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the wireless features of the MSI Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '599 Patent were met directly infringed the '599 Patent, MSI, upon information and belief, actively encouraged and induced the third-party infringers to directly infringe the '599 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the MSI Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '599 Patent:

- https://www.msi.com/faq/windpad-1089

- https://www.msi.com/faq/notebook-1364

- MSI How-To Channel (e.g., https://www.youtube.com/watch?v=H-QtVFwTmew)

206.  Based upon the foregoing facts, among other things, MSI has induced and continues to induce infringement of the asserted claims of the '599 Patent under 35 U.S.C. § 271(b).

207.  MSI has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by MSI—to be used as components and material parts of the inventions covered by the '599 Patent. For example, the Accused Products include Wi-Fi Direct features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

208.  MSI also knew that the accused products are operated in a manner that practices each asserted claim of the '599 Patent.

209.  The wireless features are specially made and adapted to infringe the asserted claims of the '599 Patent.

210.    The Wi-Fi Direct features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '599 Patent, it has no substantial non-infringing use. At least by SPV's notice of MSI's infringement, based upon the foregoing facts, MSI knew of or was willfully blind to the fact that such functionality was especially made and adapted for—and was in fact used in—the accused products in a manner that is covered by the '599 Patent.

211.    Based upon the foregoing facts, among other things, MSI has contributorily infringed and continues to contributorily infringe the asserted claims of the '599 Patent under 35 U.S.C. § 271(c).

212.    Upon information and belief, MSIs' acts of infringement of the '599 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '599 Patent and how the MSI Accused Products infringe them.  Rather than take a license to the '599 Patent, MSI's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

213.    MSI's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages

sustained as a result of MSI's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

**NOTICE**
**NOTICE OF REQUIREMENT OF LITIGATION HOLD**

214.   MSI is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that MSI knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

215.   As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files,

spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of MSI's agents, resellers, distributors or employees if MSI's electronically stored information resides there.

216.    MSI is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to MSI's claims and/or defenses. To avoid such a result, MSI's preservation duties include, but are not limited to, the requirement that MSI immediately notify its agents, distributors, and employees to halt and/or supervise the auto-delete functions of MSI's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

SPV hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

SPV prays for the following relief:

a. That MSI be summoned to appear and answer;

b. That the Court enter judgment that MSI has infringed the '871, '441, '144, '028, and '599 Patents.

c. That the Court grant SPV judgment against MSI for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

d. That MSI's infringement be found to have been willful;

e. That this case be found to be exceptional under 35 U.S.C. § 285; and

f. That SPV be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  April 29, 2025                    Respectfully submitted,


                                          By: _____
                                              Cabrach J. Connor
                                              Cab@CLandS.com
                                              Texas Bar No. 24036390
                                              Jennifer Tatum Lee
                                              Jennifer@CLandS.com
                                              Texas Bar No. 24046950
                                              John M. Shumaker
                                              John@CLandS.com
                                              Texas Bar No. 24033069

                                              CONNOR LEE & SHUMAKER PLLC
                                              609 Castle Ridge Road, Suite 450
                                              Austin, Texas 78746
                                              512.646.2060 Telephone
                                              888.387.1134 Facsimile